UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL A. CRABTREE, as CHIEF EXECUTIVE )
OFFICER OF THE CENTRAL PENSION FUND )
OF THE INTERNATIONAL UNION OF OPERATING )
ENGINEERS AND PARTICIPATING EMPLOYERS )
4115 Chesapeake Street, N.W. )
Washington, D.C. 20016, )
                                                 )
      and )
                                                 )
BOARD OF TRUSTEES OF THE INTERNATIONAL )
UNION OF OPERATING ENGINEERS AND PIPE )
LINE EMPLOYERS HEALTH AND WELFARE )
FUND )
1125 Seventeenth Street, N.W. )
Washington, D.C. 20036, )
                                                 )
      and )
                                                 )
BOARD OF TRUSTEES OF THE INTERNATIONAL )
UNION OF OPERATING ENGINEERS AND PLCA )
NATIONAL PIPELINE TRAINING FUND )
1125 Seventeenth Street, N.W. ) C O M P L A I N T
Washington, D.C. 20036, )
                                                 )
      and )
                                                 )
BOARD OF TRUSTEES OF THE INTERNATIONAL )
UNION OF OPERATING ENGINEERS NATIONAL )
TRAINING FUND )
1125 Seventeenth Street, N.W. )
Washington, D.C. 20036, )
                                                 )
                            Plaintiffs, )
                                                  )
                                                 )

|  |  |
|---|---|
| v. | ) |
|  | ) |
| **MILLER PIPELINE, LLC d/b/a** | ) |
| **MILLER PIPELINE CORPORATION** | ) |
| **8850 Crawfordsville Road** | ) |
| **Indianapolis, Indiana 46234,** | ) |
|  | ) |
| **Serve: Registered Agent** | ) |
| **The CT Corporation System** | ) |
| **150 W. Market Street, Suite 800** | ) |
| **Indianapolis, Indiana  46204,** | ) |
|  | ) |
| **Defendant.** | ) |

## COMPLAINT

### (TO COLLECT CONTRIBUTIONS AND DAMAGES DUE TO EMPLOYEE BENEFIT FUNDS AND FOR AN AUDIT)

Plaintiffs, pursuant to Federal Rule of Civil Procedure 8(a), hereby allege the following:

## PARTIES

1. Plaintiff, Michael A. Crabtree, is the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (hereinafter "Central Pension Fund").  The Central Pension Fund is an employee benefit plan as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1).  The Central Pension Fund is a multiemployer plan as that term is defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The Central Pension Fund was established and is maintained in accordance with its Restated Agreement and Declaration of Trust.  The Central Pension Fund is administered by the Trustees at 4115 Chesapeake Street, N.W., Washington, D.C. 20016.  The Plaintiff, Michael A. Crabtree, C.E.O. of the Central Pension Fund, is a designated fiduciary in accordance with the Central Pension Fund's Restated Agreement and

Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Central Pension Fund is funded as required by collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers.

    2.    Plaintiff, Board of Trustees of the International Union of Operating Engineers and Pipe Line Employers Health and Welfare Fund ("Health and Welfare Fund") is an employee benefit plan as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3).  The Health and Welfare Fund is a multiemployer plan as that term is defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The Health and Welfare Fund was established and is maintained in accordance with its Restated Agreement and Declaration of Trust.  The Health and Welfare Fund transacts its business at 1125 Seventeenth Street, N.W., Washington, D.C. 20036.  The individual members of the Board of Trustees are designated fiduciaries in accordance with the Health and Welfare Fund's Restated Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Health and Welfare Fund is funded as required by collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers.

    3.    Plaintiff, Board of Trustees of the International Union of Operating Engineers and PLCA National Pipe Line Training Fund ("Pipe Line Training Fund") is an employee benefit plan as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3).  The Pipe Line Training Fund is a multiemployer plan as that term is defined in Section 3(37) of ERISA, 29 U.S.C.

§ 1002(37).  The Pipe Line Training Fund was established and is maintained in accordance with its Agreement and Declaration of Trust.  The Pipe Line Training Fund transacts its business at 1125 Seventeenth Street, N.W., Washington, D.C. 20036.  The individual members of the Board of Trustees are designated fiduciaries in accordance with the Pipe Line Training Fund's Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Pipe Line Training Fund is funded as required by collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers.

4.      The Plaintiff Board of Trustees of the International Union of Operating Engineers National Training Fund ("National Training Fund") is an employee benefit plan as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3).  The National Training Fund is a multiemployer plan as that term is defined in Section 2(37) of ERISA, 29 U.S.C. § 1002(37).  The National Training Fund was established and is maintained in accordance with its Restated Agreement and Declaration of Trust. The National Training Fund transacts its business at 1125 Seventeenth Street, N.W., Washington, D.C. 20036.  The individual members of the Board of Trustees are designated fiduciaries in accordance with the National Training Fund's Restated Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(1). The National Training Fund is funded as required by collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers.

5.      Defendant Miller Pipeline, LLC d/b/a Miller Pipeline Corporation ("Miller Pipeline"), is an Illinois limited liability company with an office located at 8850

4

Crawfordsville Road, Indianapolis, Indiana, and at all times relevant to this action has been an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11) and (12), and Section 3 of the Multi-Employer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001a.

## JURISDICTION AND VENUE

6. This is an action to collect contributions due to employee benefit plans under the terms of collective bargaining agreements and trust agreements. This Court has subject matter jurisdiction under §§ 502(a)(3), (e)(1) and (g) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), (e)(1) and (g) and 1145, and 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over the Defendant pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(e)(2).

8. Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## FACTS

9. Defendant Miller Pipeline has been bound at all relevant times to the National Distribution, Utilities & Maintenance Agreement and the National Pipe Line Agreement with the International Union of Operating Engineers ("Agreements") that govern the wages, benefits and terms and conditions of employment of certain employees performing work for the Defendant.

10. Pursuant to the Agreements the Defendant agreed to pay certain sums of money to the Plaintiffs for certain hours worked by employees of the Defendant performing work covered by the Agreements.

11. Pursuant to the Plaintiffs' Restated Agreements and Declarations of Trust an employer who fails to pay required contributions is liable for liquidated damages in the amount of 20% of the total contributions owed.

12. Pursuant to the Plaintiffs' Restated Agreements and Declarations of Trust an employer who fails to pay required contributions is liable for interest at the rate of 9% per annum.

13. Pursuant to the Plaintiffs' Restated Agreements and Declarations of Trust an employer who fails to pay required contributions is liable for all attorneys' fees, audit fees and costs.

14. Pursuant to the Restated Agreements and Declarations of Trust, an employer making contributions to the Plaintiffs is obligated to supply records necessary to permit the Plaintiffs to determine if the employer is making the required payments.

15. During the months of January 2008 through the present the Defendant employed employees performing work covered by the Agreements.

16. Calibre CPA Group PLLC conducted a payroll compliance review of the Defendant's books and records for the period January 2008 through December 2010, which was completed in or around August 2014.

17. Pursuant to that payroll compliance review, it was discovered that the Defendant failed to pay all contributions owing to the Plaintiffs Central Pension Fund and National Training Fund during the months of June 2008 through December 2010.

18. Plaintiffs Central Pension Fund, Health and Welfare Fund, Pipe Line Training Fund and National Training Fund commenced case number 1:15-cv-0620-ABJ against Defendant in the United States District Court for the District of Columbia on April 24, 2015

to, *inter alia*, recover the delinquent contributions and attendant damages uncovered by the payroll compliance review.

19.     In December 2015, the Plaintiffs and Defendant executed a Dismissal Agreement, which was effective April 24, 2015 ("Dismissal Agreement"). In the Dismissal Agreement, the Plaintiffs and Defendant acknowledged that, in addition to the payroll compliance review completed for the period January 2008 through December 2010, Calibre CPA Group PLLC was in the process of completing an additional payroll compliance review covering the period January 2011 through June 2015, and that the Defendant had agreed to cooperate to work towards a resolution of the payroll compliance reviews and lawsuit.

20.     The Dismissal Agreement also included a tolling agreement effective April 24, 2015 through and including December 31, 2016. The Defendant agreed that "in exchange for a dismissal of the Lawsuit without prejudice, that every statute of limitations, repose and defense in connection with the Lawsuit and the IUOE Benefit Funds' potential claims against Miller Pipeline will be tolled in the manner described below."

21.     The Dismissal Agreement defined "Tolled Claims" as "any claims by the IUOE Benefit Funds against Miller Pipeline, including, but not limited to, claims against Miller Pipeline arising out of or in connection with the obligation to pay contributions, interest, liquidated damages, audit fees, attorneys' fees and costs to the IUOE Benefit Funds," and further provided that "[t]he Parties stipulate, covenant and agree that any and all Timing Defenses applicable to the Tolled Claims shall be tolled during the Tolling Period, and that the Tolling Period may not be included in the calculation of any period of time, including but not limited to any limitations period, the running of which would provide the basis, in whole

or in part, for any Timing Defense that Miller Pipeline could maintain or interpose with respect to Tolled Claims."

22. In or around December 2017, Calibre CPA Group PLLC completed the revised payroll compliance review of Defendant's books and records for the period January 2011 through June 2015.

23. Pursuant to that payroll compliance review, it was discovered that the Defendant failed to pay all contributions owing to the Plaintiffs Central Pension Fund, Health and Welfare Fund, Pipeline Training Fund, National Training Fund and Industry Advancement Fund during the months of January 2011 through June 2015.

24. The Plaintiffs and Defendant negotiated and executed a Tolling Agreement effective January 1, 2017 ("Tolling Agreement"), which explicitly acknowledged the Dismissal Agreement and the tolling agreement contained therein, and provided that "Miller Pipeline agrees that every statute of limitations, repose and defense in connection with the IUOE Benefit Funds' potential claims against Miller Pipeline will continue to be tolled …" and that "[t]he Parties stipulate, covenant and agree that any and all Timing Defenses applicable to the Tolled Claims shall continue to be tolled during the Tolling Period, and that the Tolling Period may not be included in the calculation of any period of time, including but not limited to any limitations period …" so the Plaintiffs and Defendants could "continue the process of completing a payroll compliance review for the period of 2008 through 2015."

25. The Tolling Agreement covered the tolling period January 1, 2017 through June 30, 2017, and provided that the "Tolling Period covered by this Tolling Agreement is agreed by the Parties to be *in addition to* the Tolling Period contained in the previous Dismissal Agreement." (emphasis in original).

26. The Plaintiffs and Defendant subsequently negotiated eight extensions to the Tolling Agreement, which were reduced to writing and executed as the "First Modification to Tolling Agreement" through the "Eighth Modification to Tolling Agreement," respectively. The Modifications collectively extended the terms of the Tolling Agreement and covered the period July 1, 2017 through May 31, 2019.

## COUNT I

### (UNPAID CONTRIBUTIONS AND DAMAGES OWED TO EMPLOYEE BENEFIT FUNDS)

27. Plaintiffs hereby restate and incorporate by reference the allegations set forth in paragraphs 1 through 26 as if fully set forth in this Count I.

28. In or around August 2014 Calibre CPA Group completed a payroll audit of the records supplied by the Defendant for the period of January 2008 through December 2010.

29. The results of the audit revealed that during the months of June 2008 through December 2010 the Defendant failed to pay all contributions owing to the Central Pension Fund and National Training Fund under the Agreements in the total amount of $14,513.57.

30. The Defendant failed to pay the amount owing to the Central Pension Fund and National Training Fund as revealed by the audit.

31. By virtue of the failure to pay all contributions as contractually required, the Defendant is in contravention of the Agreements and the obligations under the Central Pension Fund's and National Training Fund's Restated Agreements and Declarations of Trust, and Section 515 of ERISA.

32. The Defendant has failed to pay liquidated damages and interest for late and unpaid contributions owed to the Central Pension Fund and National Training Fund.

33. The Central Pension Fund and National Training Fund are entitled to judgment for all contributions owed, plus all unpaid liquidated damages and interest owed on late and unpaid contributions, plus attorneys' fees, costs and audit fees against the Defendant.

34. The Plaintiffs will seek a judgment in this action against the Defendant for all contributions, interest, liquidated damages, audit costs and attorneys' fees and costs which become due, or are estimated to be due, subsequent to the filing of this action, during the pendency of this action, and up to the date of judgment.

## COUNT II

### (UNPAID CONTRIBUTIONS AND DAMAGES OWED TO EMPLOYEE BENEFIT FUNDS)

35. Plaintiffs hereby restate and incorporate by reference the allegations set forth in paragraphs 1 through 34 as if fully set forth in this Count II.

36. In or around December 2017 Calibre CPA Group completed a payroll audit of the records supplied by the Defendant for the period of January 2011 through June 2015.

37. The results of the audit revealed that during the months of January 2011 through June 2015 the Defendant failed to pay all contributions owing to the Central Pension Fund, Health and Welfare Fund, Pipe Line Training Fund and National Training Fund under the Agreements in the total amount of $300,059.49.

38. The Defendant failed to pay the amount owing to the Central Pension Fund, Health and Welfare Fund, Pipe Line Training Fund and National Training Fund as revealed by the audit.

39. By virtue of the failure to pay all contributions as contractually required, the Defendant is in contravention of the Agreements and the obligations under the Central Pension Fund's, Health and Welfare Fund's, Pipe Line Training Fund's and National Training Fund's Restated Agreements and Declarations of Trust, and Section 515 of ERISA.

40. The Defendant has failed to pay liquidated damages and interest for late and unpaid contributions owed to the Central Pension Fund, Health and Welfare Fund, Pipe Line Training Fund and National Training Fund.

41. The Central Pension Fund, Health and Welfare Fund, Pipe Line Training Fund and National Training Fund are entitled to judgment for all contributions owed, plus all unpaid liquidated damages and interest owed on late and unpaid contributions, plus attorneys' fees, costs and audit fees against the Defendant.

42. The Plaintiffs will seek a judgment in this action against the Defendant for all contributions, interest, liquidated damages, audit costs and attorneys' fees and costs which become due, or are estimated to be due, subsequent to the filing of this action, during the pendency of this action, and up to the date of judgment.

## **COUNT III**

### **(AUDIT)**

43. Plaintiffs hereby restate and incorporate by reference the allegations set forth in paragraphs 1 through 42 as if fully set forth in this Count III.

44. An audit of the Defendant's records for the period of July 2015 through the present will permit the Plaintiffs to determine whether the Defendant is properly reporting and paying the contribution amounts owed to the Plaintiffs.

45.     Under the terms of the Plaintiff's Restated Agreements and Declarations of Trust and the Agreements, Plaintiff is entitled to conduct an audit of Defendant's records, at the Defendant's expense.

**WHEREFORE,** Plaintiffs pray judgment against the Defendant as follows:

A.      For unpaid contributions due and owing to the Plaintiffs for work performed during the months of January 2008 through June 2015.

B.      For liquidated damages and interest for any late-paid and unpaid contributions owed as provided for in the Plaintiffs' Restated Agreements and Declarations of Trust and/or pursuant to 29 U.S.C. § 1132(g)(2) through the date of judgment.

C.      For such contributions, interest and liquidated damages that may accrue and/or are found to be due and owing to the Plaintiffs subsequent to the filing of this Complaint, during the pendency of this action, and up to the date of judgment pursuant to the Agreements, Restated Agreement and Declaration of Trust and/or 29 U.S.C. § 1132(g)(2).

D.      For audit fees, costs and reasonable attorneys' fees as required by 29 U.S.C. § 1132(g)(2) and/or the Plaintiffs' Restated Agreements and Declarations of Trust up to the date of judgment.

E.      For a Court Order requiring Defendant to submit all payroll books and records to Plaintiffs for an updated audit at the Defendant's cost for the period of July 2015 through the date the audit is completed, and for any and all contributions, liquidated damages, and interest owed to the Plaintiffs which become due as a result of the updated audit.

F.      Such further relief as the Court deems appropriate.

Respectfully submitted,

Dated:  May 31, 2019          **O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Telephone: (202) 362-0041
Facsimile: (202) 362-2640
cgilligan@odonoghuelaw.com

By:   /s/ Charles W. Gilligan
Charles W. Gilligan (Bar No. 394710)
*Attorney for the Plaintiffs*